# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
### CASE NO. 5:24-cv-380

Amy Rumford,

      Plaintiffs,

v.

CommerceHub, Inc,
ChannelAdvisor Corporation, and
Rithum Holdings, Inc.,[1]

      Defendants.

**DEFENDANTS' ANSWER TO
PLAINTIFF'S COMPLAINT**

COME NOW Defendants CommerceHub, Inc. (now known as Rithum Holdings, Inc.) and ChannelAdvisor Corporation (now known as Rithum Corporation) (together, "Defendants"), by and through the undersigned counsel, and respond to the individually numbered allegations in the Complaint of Plaintiff Amy Rumford ("Plaintiff") as follows. As an initial matter, Plaintiff incorrectly names all Defendants. Effective January 16, 2024, CommerceHub, Inc. was renamed Rithum Holdings, Inc. These are not separate business entities. Rithum Holdings, Inc. has no employees and the entity, whether by that name or by CommerceHub, Inc. never employed Plaintiff. Effective January 16, 2024, ChannelAdvisor Corporation was renamed Rithum Corporation. This is the only Defendant entity that employed Plaintiff. For sake of clarity, Defendants' answers to Plaintiff's allegations will refer to Rithum Corporation f/k/a ChannelAdvisor Corporation as "ChannelAdvisor" and Rithum Holdings, Inc. f/k/a CommerceHub, Inc. as "CommerceHub."

---

[1] Rithum Holdings, Inc. and CommerceHub, Inc. are the same entity. CommerceHub, Inc. was renamed to Rithum Holdings, Inc. and ChannelAdvisor Corporation was renamed to Rithum Corporation. Both name changes became effective on January 16, 2024.

Defendants deny every allegation of the Complaint except as otherwise specifically admitted, explained, or modified herein.

**JURISDICTION AND VENUE**

1. Plaintiff Amy Rumford is a female, fifty-eight-year-old citizen and resident of Raleigh, Wake County, North Carolina. Plaintiff was born in 1966. Defendants employed Plaintiff at their Morrisville, North Carolina office until her termination effective on March 1, 2023.

**ANSWER:** **On information and belief, Defendants admit the allegations in Paragraph 1.**

2. Defendant ChannelAdvisor Corporation (hereinafter "ChannelAdvisor") is a corporation organized and existing under the laws of the State of Delaware. ChannelAdvisor's principal place of business was located at 3025 Carrington Mill Boulevard., Suite 500, Morrisville, North Carolina 27560 prior to its acquisition by CommerceHub. After the acquisition, ChannelAdvisor's principal office shifted to that of Defendant CommerceHub. At all times relevant to this Complaint, ChannelAdvisor was an employer of Plaintiff and employed twenty (20) or more employees. Upon information and belief, ChannelAdvisor has continued in existence as a separate legal entity since its acquisition by CommerceHub, Inc.

**ANSWER:** **Defendants admit only that ChannelAdvisor is a Delaware corporation with a principal place of business formerly located at 3025 Carrington Mill Boulevard., Suite 500, Morrisville, North Carolina 27560 through November 15, 2022, when the CommerceHub and ChannelAdvisor company groups combined as a result of the acquisition. The current principal place of business for both ChannelAdvisor and CommerceHub is 1201 Peachtree St. NE, Suite 600, Atlanta, GA 30361. Defendants further admit only that ChannelAdvisor employed Plaintiff and that it employed twenty (20) or more employees. Defendants further**

admit only that, effective January 16, 2024, ChannelAdvisor was renamed Rithum Corporation and is and always has been a wholly separate entity from Rithum Holdings, Inc. f/k/a CommerceHub, Inc. Defendants deny the remaining allegations in Paragraph 2.

3.      Upon information and belief, Defendant CommerceHub, Inc. (hereinafter "CommerceHub") is a corporation organized and existing under the laws of the State of Delaware. CommerceHub's principal place of business is located at 800 Tory-Schenectady Road, Suite 100, Latham, New York 12110. At all times relevant to this Complaint, CommerceHub was an employer of Plaintiff. At all times relevant to this Complaint, CommerceHub employed twenty (20) or more employees. Upon information and belief, at the time of her termination and during the events giving rise to this Complaint, Defendant CommerceHub was the sole owner of Defendant ChannelAdvisor.

**ANSWER:**      **Defendants admit only that CommerceHub is a Delaware corporation. CommerceHub's principal place of business is located at 1201 Peachtree St. NE, Suite 600, Atlanta, GA 30361. Defendants deny the remaining allegations in Paragraph 3.**

4.      At the time of her termination, Ms. Rumford was jointly employed by both Defendant CommerceHub and Defendant ChannelAdvisor.

**ANSWER:**      **Defendants deny the allegations in Paragraph 4.**

5.      Defendant Rithum Holdings, Inc. (hereinafter "Rithum") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1201 Peachtree Street NE, Suite 600, Atlanta, Georgia. Upon information and belief, Rithum is a

holding company under which ChannelAdvisor and CommerceHub were combined after Plaintiff's employment. Upon information and belief, Rithum has assumed the liabilities of ChannelAdvisor and/or CommerceHub and/or is liable as a successor-in-interest in this suit.

**ANSWER:** **Defendants admit only that Rithum Holdings, Inc., formerly known as CommerceHub, is a Delaware corporation. The principal place of business for Rithum Holdings, Inc. is currently located at 1201 Peachtree Street NE, Suite 600, Atlanta, Georgia. Defendants deny that Rithum Holdings, Inc. is a separate entity from CommerceHub, as Rithum Holdings, Inc. was previously known as CommerceHub, Inc. Defendants deny the remaining allegations in Paragraph 5.**

6.      This Court possesses personal jurisdiction over the Defendants pursuant to N.C. Gen. Stat. § 1-75.4. The acts and omissions giving rise to the claims herein occurred in North Carolina and Defendants have availed themselves of North Carolina law by regularly conducting business in this State. Subject matter jurisdiction is similarly proper.

**ANSWER:** **Defendants have removed this action from this Court to the United States District Court for the Eastern District of North Carolina, Western Division. Defendants admit only that the United States District Court for the Eastern District of North Carolina has subject matter jurisdiction over this action. Defendants deny the remaining allegations in Paragraph 6.**

7.     Venue is proper in this Court pursuant to N.C. Gen. Stat. § 1-80.

**ANSWER:     Defendants admit only that Venue is proper in the United States District Court for the Eastern District of North Carolina, Western Division pursuant to 28 U.S.C. § 1441(a). Defendants deny the remaining allegations in Paragraph 7.**

## FACTUAL ALLEGATIONS

8.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

**ANSWER: Defendants incorporate by reference their answers to the preceding Paragraphs as if more fully set forth herein.**

9.     Ms. Rumford began working for ChannelAdvisor in January 2021 when she was hired as the Vice President of Global Services.

**ANSWER:     Defendants admit the allegations in Paragraph 9.**

10.     On or about September 6, 2022, it was announced that CommerceHub would acquire ChannelAdvisor.

**ANSWER:     Defendants admit the allegations in Paragraph 10.**

11.     Throughout her time working for Defendants, Ms. Rumford was a hard worker, key decisionmaker, and outstanding performer.

**ANSWER:     Defendants deny the allegations in Paragraph 11.**

12.     For instance, during the first half of 2022, when the company experienced its greatest economic strain post-pandemic, Ms. Rumford maintained the company's "Contractions and Churn" performance, a measure of customer retention, to within one point of the company's target during the first half of the year.

**ANSWER:     Defendants deny the allegations in Paragraph 12.**


13.     In fact, on November 14, 2022, Bryan Dove, CommerceHub's CEO, specifically told Ms. Rumford that he expected that Ms. Rumford would stay with the company after the acquisition of ChannelAdvisor was completed.

**ANSWER:     Defendants admit only that Mr. Dove discussed with Plaintiff potential continuing role with ChannelAdvisor after that entity's acquisition by CommerceHub. Defendants deny the allegations in Paragraph 13.**


14.     During this discussion, Mr. Dove explained that Ms. Rumford would partner on overall Services with Blaine Nielsen, CommerceHub's Senior VP Customer Success, and report to Mr. Nielsen while retaining her existing leadership responsibilities.

**ANSWER:     Defendants admit only that Mr. Dove discussed with Plaintiff potential continuing role with ChannelAdvisor after that entity's acquisition by CommerceHub. Defendants deny the allegations in Paragraph 14.**


15.     Ms. Rumford was hesitant about the changes, so she sought assurances about the new role. Ms. Rumford asked whether this promised role would be ongoing, within the same

organization, and retaining the same compensation (salary, bonus, equity) as prior to the acquisition. Mr. Dove responded, "yes on all counts."

**ANSWER:** **Defendants deny the allegations in Paragraph 15.**

16. Mr. Dove then explained that the team was working to get a CommerceHub equity program in place within the next 30-60 days, which would replace the former ChannelAdvisor equity program. Mr. Dove also told Ms. Rumford that long term incentives promised prior to the acquisition "will be honored."

**ANSWER:** **Defendants deny the allegations in Paragraph 16.**

17. Mr. Dove then asked that Ms. Rumford confirm that she was interested in remaining in her leadership role. Ms. Rumford confirmed and continued working for Defendants as the companies merged, in reliance upon these promises made by CommerceHub's CEO.

**ANSWER:** **Defendants admit only that Plaintiff continued working for ChannelAdvisor after its acquisition by CommerceHub. Defendants deny the remaining allegations in Paragraph 17.**

18. On November 15, 2022, ChannelAdvisor officially became part of CommerceHub when the acquisition closed and thereafter Ms. Rumford continued her leadership role within the newly merged company. For example, on November 15-16, 2022, Ms. Rumford was invited to present on five different business topics for approximately two hours each in Atlanta. Moreover, Ms. Rumford had previously worked with other executives and leaders the week before for integration discussions related to the merger which also took place in Atlanta. And

following the acquisition, Ms. Rumford continued to lead and participate in integration activities for the next eleven (11) weeks, while also continuing to lead her existing organization.

**ANSWER:** **Defendants admit only that CommerceHub acquired ChannelAdvisor and that Plaintiff continued her employment with ChannelAdvisor after the acquisition. Defendants deny the remaining allegations in Paragraph 18.**

19.     However, on February 2, 2023, Ms. Rumford was unexpectedly notified by Mr. Nielsen that there was an organizational downsizing and that her role was being eliminated as part of the plan.

**ANSWER:** **Defendants admit only that Plaintiff was notified that her employment with ChannelAdvisor would terminate in connection with a reduction in force. Defendants deny the remaining allegations in Paragraph 19.**

20.     The next day, February 3, 2023, Ms. Rumford spoke with Mr. Nielsen about her termination. She explained to him that Mr. Dove had promised her an ongoing leadership role just a few months earlier and now that promise was being broken. Mr. Nielsen responded, "yes, I remember you telling me that." He then reassured Ms. Rumford that there would be "special considerations" for her exit package based on her seniority level. This was another promise that would not be honored.

**ANSWER:** **Defendants admit only that Plaintiff was offered a severance package in connection with the termination of her employment with ChannelAdvisor. Defendants deny the remaining allegations in Paragraph 20.**

21. On February 6, 2023, Ms. Rumford asked how the Defendants planned to cover the tasks for the roles being eliminated during the downsizing. Mr. Nielsen responded that Mr. Dove was conducting a search for a new executive to run "Managed Services", a segment of Ms. Rumford's organization, which included an outsourcing of work initiative. Curiously, however, Ms. Rumford had already been leading the company's efforts to get an outsourcing initiative. Ms. Rumford had attempted to get this work approved by Mr. Nielsen and Matt Hardy, CommerceHub's CFO. Ms. Rumford did not understand why she would be laid off only to have a new executive hired in her place to continue performing work that she had already begun. In fact, Ms. Rumford already had an outsourcing plan prepared and ready for execution, with vendor vetting complete and costs already negotiated.

**ANSWER:** **Defendants admit only that CommerceHub leadership sought to hire a new employee to lead a segment of the former Global Services department. Defendants deny the remaining allegations in Paragraph 21.**

22. On February 13, 2023, Mr. Dove held an All Hands Meeting with U.S. employees to explain the downsizing and answer concerns. At this meeting, Mr. Dove informed the group that he had been "working on this for months," and that he personally "signed off on every action." These statements contradicted Mr. Dove's promises to Ms. Rumford that she would continue to serve as the VP of Global Services for CommerceHub in the long-term following the acquisition. It became clear at this time that Mr. Dove's promise was

intended simply to induce Ms. Rumford to continue integral work through the transition period in reliance on his promises, and nothing more.

**ANSWER:** **Defendants admit only that a meeting was held to address the reduction in force. Defendants deny the remaining allegations in Paragraph 22.**

23.     During the Question & Answer portion of this same All Hands Meeting, a question was raised about whether Executives would be taking pay cuts in order to address the cost issues that led to the layoffs. However, Mr. Dove made it explicitly clear that "executive compensation is very different and includes higher components of bonus and equity pay." This response underscores Mr. Dove's understanding that executives are compensated differently than other employees. Yet it was under Mr. Dove's direction that the company provided a separation package to Ms. Rumford that does not take into account her role as an executive employee.

**ANSWER:** **Defendants deny the allegations in Paragraph 23.**

24.     Separation packages were due to be emailed at 4:30 P.M. on February 13, 2023, prior to the above forementioned All Hands Meeting. However, Ms. Rumford's package was late. Ms. Rumford separately texted ChannelAdvisor's Vice President of Human Resources about not receiving her separation package. Through her text exchange with the VP of Human Resources, Ms. Rumford learned that the packages were being sent out in batches with the later batches receiving the most customization. Ms. Rumford was informed that her package would be a custom agreement, reflecting her executive status, and included in the last batch.

**ANSWER:** Defendants admit only that Ms. Rumford's severance agreement was delivered to her on February 13, 2023, and that separation agreements were distributed in batches. Defendants deny making Plaintiff any promises regarding the specific terms of any separation package. Defendants deny the other allegations in Paragraph 24.

25. It was not until 6:20pm on February 13, 2023, that Ms. Rumford received her package. When Ms. Rumford received her separation package, she realized she was offered the same proposal package as all individual contributors, with *no* customization to acknowledge to her level, role, or impact to the company despite the aforementioned assurances of Mr. Nielsen and Human Resources.

**ANSWER:** Defendants admit only that Plaintiff received her separation package at 6:20 p.m. on February 13, 2023. Defendants deny making Plaintiff any promises regarding the specific terms of any separation package. Defendants deny the remaining allegations in Paragraph 25.

26. During her more than two years at the company, Ms. Rumford managed 4 business functions globally and led a total of over 350 in-house employees globally at 7 different sites in addition to approximately 70 outsourced vendor employees. Ms. Rumford made key decisions for the company and presented those decisions to the Board of Directors quarterly. She was vocal in her participation and influence in corporate decision-making regarding policy, people, and customers. Her outstanding performance in the role was captured in her positive performance review for 2021, strong Contractions and Churn

retention rate, absence of any write-ups or formal complaints, and strategic utilization by Mr. Dove to get through and facilitate the acquisition.

**ANSWER:**    Defendants deny the allegations in Paragraph 26.

27.    However, despite her demonstrated ability to perform the role at a high level and Mr. Dove's assurances that her leadership after the acquisition would be ongoing, Ms. Rumford was terminated and Defendants hired a younger, 49-year-old male to serve as her replacement.

**ANSWER:**    Defendants deny the allegations in Paragraph 27.

28.    Ms. Rumford was not the only female let go by Defendants. Defendants demonstrated a pattern of disproportionately terminating females. Along with Ms. Rumford, 75% (3 out of 4) of the female Executive Leadership Team ("ELT") members were also terminated compared to just 30% (3 out of 10) of the male ELT members. This left the remaining leadership team with only one female among seven males (12.5% female).

**ANSWER:    Defendants admit only that Plaintiff was not the only female who was terminated as a result of the reduction in force. Defendants deny the relevance of the limited statistics set forth in Paragraph 28. Defendants deny the remaining allegations in Paragraph 28.**

29.    A similar pattern is reflected in Defendants' U.S.-based manager roles on the Global Services team. There, 46% of the female managers lost their jobs (6 out of 13) compared to only 11% of the male managers (1 out of 9). And in fact, one of the retained male

managers was selected for a new role as a Renewals Manager in the Sales organization without Sales ever opening the role to allow other candidates (impacted or non-impacted) to apply.

**ANSWER:** **Defendants admit only that Plaintiff was not the only female who was terminated as a result of the reduction in force. Defendants deny the relevance of the limited statistics set forth in Paragraph 29. Defendants deny the remaining allegations in Paragraph 29.**

30.     There is one other younger (early 40's), male peer who was laid off on a similar timeline to Ms. Rumford, in approximately March 2023. Upon information and belief, unlike Ms. Rumford, he was never assured of long-term post-acquisition employment by Mr. Dove. Upon information and belief, also unlike Ms. Rumford, upon his exit he received an additional pro-rated bonus in his severance package (accounting for the percentage of days he worked in 2023) even though the executive compensation bonus program only pays out on an annual, not quarterly, basis. Ms. Rumford did not receive a similar bonus for her time worked for January 1 through March 1, 2023. Ms. Rumford was treated differently than her male peer and was not afforded the same opportunity to receive an unexpected, unplanned, and uncommunicated pro-rated bonus payment from the annual Executive Bonus Plan.

**ANSWER:** **Defendants deny the allegations in Paragraph 30.**

31.     This inability to collect an individualized package like Ms. Rumford's younger, male peer is significant. That is because, as Mr. Dove made clear, executive pay is very different. Less than

50% of her total annual compensation for a Vice President is composed of salary. Whereas individual contributors' salary composes 90% of their compensation. Therefore, the lack of customization (which was afforded to Ms. Rumford's younger, male peer) impacted her expected earnings more harshly than it did others provided with the standard package. Furthermore, upon information and belief, some of Ms. Rumford's ELT peers have received severances to the tune of their full bonus for 2023, acceleration of vesting of cash awards, and a minimum of 6 months of pay plus the equivalent of one month of pay per year of employment as severance pay. Such discrepancies underscore the unequal treatment CommerceHub has directed at Ms. Rumford on account of both her age and sex.

**ANSWER:** **Defendants admit only that it gratuitously extended Plaintiff's employment by two weeks at Plaintiff's request and in the interest of an amicable separation, so that she would be eligible to receive a bonus, a substantial amount of her unvested equity awards, amounting to an additional $177,000.00 in total payments. Defendants deny the remaining allegations in Paragraph 31.**

32.     Mr. Dove's false assurances of long-term, post-acquisition employment to Ms. Rumford deprived her of the ability to react swiftly and professionally to her layoff and also prevented her from starting to plan for her transition—an opportunity afforded to several of her peer ELT members. Ms. Rumford invested considerable efforts toward building up a successful career at the company, but instead of rewarding her efforts, Defendants deceived Ms. Rumford and deprived of her employment and benefits.

**ANSWER:** **Defendants deny the allegations in Paragraph 32.**

33.     Finally, when Ms. Rumford notified CommerceHub of her intent to bring legal action, Doug Wolfson, General Counsel and Secretary of CommerceHub, sent a company-wide email notifying every employee that Ms. Rumford was looking to sue CommerceHub and that the company had done nothing wrong. Mr. Wolfson did not have to send this communication to such a broad distribution list and characterize Ms. Rumford's legal action as meritless other than to intimidate potential witnesses and defame her reputation. CommerceHub sought to intimidate Ms. Rumford, as well as any current employee who may communicate or consider bringing forward their own cases of discrimination, in retaliation to Ms. Rumford's protected activities.

**<ins>ANSWER:</ins>      Defendants admit only that Wolfson, at the demand of Plaintiff's counsel and as required by law, sent a communication to employees directing them to retain documents and information potentially relevant to Plaintiff's case to avoid spoilation of potentially relevant evidence. Defendants deny the remaining allegations in Paragraph 33.**

34.     Based on her termination, on or about February 13, 2023, Ms. Rumford filed a Charge of Discrimination and Retaliation with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of her sex and age.

**<ins>ANSWER:</ins>     Defendants admit the allegations in Paragraph 34.**

35.     On February 13, 2024, the EEOC issued Ms. Rumford a Notice of Right to Sue ("NRTS") permitting her to bring this action.

**<ins>ANSWER:</ins>     Defendants admit the allegation in Paragraph 35.**

36.    As a result of the fraudulent inducement, discrimination, and retaliation to which Ms.

Rumford was subjected she has suffered and continues to suffer emotional distress and

significant economic damages.

**ANSWER:    Defendants deny the allegations in paragraph 36.**


## FIRST CLAIM FOR RELIEF
### Fraudulent Inducement

37.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

**ANSWER: Defendants incorporate by reference their answers to the preceding Paragraphs**

**as if more fully set forth herein.**


38.    Mr. Dove, the Chief Executive Officer of Defendant CommerceHub, promised ongoing,

post-acquisition employment with Defendants with the same pay and substantially similar

job duties.

**ANSWER:    Defendants admit the allegations in Paragraph 38.**


39.    Ms. Rumford reasonably relied upon Mr. Dove's promises and, to her detriment, continued

her employment and did not seek a new job.

**ANSWER:    Defendants deny the allegations in Paragraph 39.**


40.    Upon information and belief, including Mr. Dove's statements at the All-Hands Meeting on

February 13, 2023 that he had been "working on this for months," and that he personally

"signed off on every action," Defendants never intended to retain Ms. Rumford post-acquisition, including at the time of Mr. Dove's prior promises to Ms. Rumford.

**ANSWER:** **Defendants deny the allegations in Paragraph 40.**

41.    Defendants falsely represented and/or actively concealed their intent to terminate Plaintiff post-acquisition and did so with the intent to deceive Ms. Rumford.

**ANSWER:** **Defendants deny the allegations in Paragraph 41.**

42.    Ms. Rumford was in fact deceived by Defendants' representations.

**ANSWER:** **Defendants deny the allegation in Paragraph 42.**

43.    As a result of Defendants' conduct, Plaintiff has suffered financial damage in an amount to be determined at trial, but in any case in excess of Twenty-Five Thousand Dollars ($25,000).

**ANSWER:** **Defendants deny the allegations in Paragraph 43.**

**SECOND CLAIM FOR RELIEF**
**Violation of Title VII of the Civil Rights Act of 1964**

44.    Plaintiff hereby incorporates the foregoing paragraphs as if fully set out herein.

**ANSWER: Defendants incorporate by reference their answers to the preceding Paragraphs as if more fully set forth herein.**

45.    Defendants employed at least twenty (20) employees at all times relevant to this Complaint.

**ANSWER:** **Defendants admit the allegations in Paragraph 45.**

46.     Plaintiff was meeting Defendants' legitimate expectations at the time of her termination, as reflected by her performance metrics and record of success in his role as a Vice President of Global Services.

**ANSWER:**     **Defendants deny the allegations in Paragraph 46.**

47.     Defendants had no legitimate non-discriminatory reason to terminate Plaintiff.

**ANSWER:**     **Defendants deny the allegations in Paragraph 47.**

48.     The actions of Defendants, as set forth herein, constitute discrimination against Plaintiff on the basis of her sex.

**ANSWER:**     **Defendants deny the allegations in Paragraph 48.**

49.     Defendants intended to, and did, illegally discriminate against the Plaintiff on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

**ANSWER:**     **Defendants deny the allegations in Paragraph 49.**

50.     Defendants discriminated against Ms. Rumford in the terms and conditions of her employment, including by treating her differently than similarly-situated male peers when it came to layoff decisions and by treating her differently than similarly-situated male peers in the severance and termination process.

**ANSWER:**     **Defendants deny the allegations in Paragraph 50.**

51.     Plaintiff was terminated and replaced by a male employee.

**ANSWER:     Defendants deny the remaining allegations in Paragraph 51.**


52.     Plaintiff exhausted all available administrative remedies and conditions precedent prior to

filing this claim, including filing a claim with the EEOC and receiving a NRTS from the

same.

**ANSWER:     Defendants admit the allegations in Paragraph 52.**


53.     Plaintiff is entitled to all of her benefits of employment, including, but not limited to back

pay, front pay, health insurance, life insurance, retirement benefits, and other benefits.

**ANSWER:     Defendants deny the allegations in Paragraph 53.**


54.     Plaintiff is entitled to recover compensatory damages and punitive damages as provided by

the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*, as amended by the Civil Rights

Act of 1991.

**ANSWER:     Defendants deny the allegations in Paragraph 54.**


55.     Plaintiff is entitled to recover reasonable attorney's fees, the costs and expenses of this

action, and such interest as may be allowed by law.

**ANSWER:     Defendants deny the allegations in Paragraph 55.**

56.   As a result of Defendants' conduct, Plaintiff has suffered financial damage in an amount to be determined at trial, but in any case in excess of Twenty-Five Thousand Dollars ($25,000).

**ANSWER:   Defendants deny the allegations in Paragraph 56.**

**THIRD CLAIM FOR RELIEF**
**Retaliation under Title VII of the Civil Rights Act of 1964**

57.   Plaintiff hereby incorporates the foregoing paragraphs as if fully set out herein.

**ANSWER: Defendants incorporate by reference their answers to the preceding Paragraphs as if more fully set forth herein.**

58.   Plaintiff engaged in protected activity by seeking redress for Defendants' unlawful sex discrimination by sending a letter through her attorney to Doug Wolfson, General Counsel and Secretary of CommerceHub.

**ANSWER:   Defendants deny the allegations in Paragraph 58.**

59.   Defendants sent out a company-wide statement informing every employee that Ms. Rumford was planning to sue the company characterizing her claims as meritless and, in doing so, harmed Ms. Rumford's professional reputation.

**ANSWER:   Defendants admit only that, at the demand of her attorney and in accordance with its legal obligation, a litigation hold notice was sent directing employees who may possess potentially relevant evidence related to Plaintiff's threatened legal claims to maintain those records in an effort to avoid the spoliation of potentially relevant evidence. Defendants deny the remaining allegations in Paragraph 59.**

60. Defendants' overly broad distribution and characterization of Ms. Rumford's claims were unnecessary and intended to intimidate her as well as any current employees who may communicate or consider bringing forward their own cases of discrimination. As such, Defendants took an adverse action in response to Ms. Rumford's engagement in protected activity which would reasonably dissuade an employee from bringing forth complaints of unlawful discrimination.

**ANSWER:**     **Defendants deny the allegations in Paragraph 60.**


61. The actions of Defendants as set forth herein constitute retaliation against Plaintiff for the assertion of her right to be free from unlawful discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-3(a).

**ANSWER:**     **Defendants deny the allegations in Paragraph 61.**


62. Defendants engaged in retaliation against Plaintiff with either malice or reckless indifference to the federally protected rights of Plaintiff to be free from discrimination and retaliation in the workplace.

**ANSWER:**     **Defendants deny the allegations in Paragraph 62.**


63. As a result of Defendants' conduct, Plaintiff has suffered financial damage in an amount to be determined at trial, but in any case in excess of Twenty-Five Thousand Dollars ($25,000).

**ANSWER:**     **Defendants deny the allegations in Paragraph 63.**

## FOURTH CLAIM FOR RELIEF
### Violation of Age Discrimination in Employment Act of 1967

64.     Plaintiff hereby incorporates the foregoing paragraphs as if fully set out herein.

**ANSWER: Defendants incorporate by reference their answers to the preceding Paragraphs as if more fully set forth herein.**

65.     At all times relevant to this Complaint, Plaintiff was an employee of Defendants within the meaning of the ADEA.

**ANSWER:     Defendants deny the allegations in Paragraph 65.**

66.     At the time of her termination, Plaintiff, who was born in 1966, was over the age of forty.

**ANSWER:     Defendants admit the allegations in Paragraph 66.**

67.     Plaintiff exhausted all available administrative remedies and conditions precedent prior to filing this claim.

**ANSWER:     Defendants admit the allegations in Paragraph 67.**

68.     Plaintiff was meeting Defendants' legitimate expectations at the time of her termination, as reflected by her performance metrics and record of success in his role as a Vice President of Global Services.

**ANSWER:     Defendants deny the allegations in Paragraph 68.**

69.     Plaintiff was terminated and replaced by a substantially younger individual.

**ANSWER:     Defendants deny the allegations in Paragraph 69.**


70.     Defendants, by and through the acts of Mr. Dove and others, treated Plaintiff differently than similarly-situated individuals because of Plaintiff's age.

**ANSWER:     Defendants deny the allegations in Paragraph 70.**


71.     Defendants had no legitimate non-discriminatory reason to terminate Plaintiff.

**ANSWER:     Defendants deny the allegations in Paragraph 71.**


72.     Plaintiff is entitled to all of her benefits of employment, including, but not limited to back pay, front pay, health insurance, life insurance, retirement benefits, and other benefits.

**ANSWER:     Defendants deny the allegations in Paragraph 72.**


73.     CommerceHub willfully and maliciously violated Plaintiff's right to be free from age discrimination in the workplace, entitling Plaintiff to an award of liquidated damages.

**ANSWER:     Defendants deny the allegations in Paragraph 73.**


74.     Plaintiff is entitled to recover reasonable attorney's fees, the costs and expenses of this action, and such interest as may be allowed by law.

**ANSWER:     Defendants deny the allegations in Paragraph 74.**

75.     As a result of Defendants' conduct, Plaintiff has suffered financial damage in an amount to be determined at trial, but in any case in excess of Twenty-Five Thousand Dollars ($25,000).

**ANSWER:     Defendants deny the allegation in Paragraph 75.**


**FIFTH CLAIM FOR RELIEF**
**Wrongful Discharge in Violation of North Carolina Public Policy**

76.     Plaintiff hereby incorporates the foregoing paragraphs as if fully set out herein.

**ANSWER: Defendants incorporate by reference their answers to the preceding Paragraphs as if more fully set forth herein.**


77.     It is the public policy of North Carolina that individuals should not be subject to discrimination on the basis of sex and/or age in employment, as set forth in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.1 *et seq*.

**ANSWER:     The averments in Paragraph 77 are legal conclusions to which no response is required. Defendants deny that Defendants engaged in any unlawful actions or that Plaintiff is entitled to relief whatsoever.**


78.     Defendants' actions in discharging Ms. Rumford while treating her differently than younger and male peers contravenes the public policy of North Carolina and constitutes wrongful discharge in violation of public policy.

**ANSWER:     Defendants deny the allegations in Paragraph 78.**

79.     Defendants' actions in discharging Ms. Rumford were taken with malice and/or reckless indifference to Ms. Rumford's rights. Defendants' actions in discharging Ms. Rumford were decided on by and effectuated by Defendants' high level executives, including CEO Dove.

**ANSWER:     Defendants deny the allegations in Paragraph 79.**

80.     As a result of Ms. Rumford's wrongful discharge, she has suffered emotional distress, economic damages, and damage to her reputation, inter alia.

**ANSWER:     Defendants deny the allegations in Paragraph 80.**

81.     Ms. Rumford is entitled to back pay, front pay, compensatory and punitive damages, and such other relief as the Court shall deem proper.

**ANSWER:     Defendants deny the allegations in Paragraph 81.**

82.     As a result of Defendants' conduct, Plaintiff has suffered financial damage in an amount to be determined at trial, but in any case in excess of Twenty-Five Thousand Dollars ($25,000).

**ANSWER:     Defendants deny the allegations in Paragraph 82.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court for judgment as follows:

a.      That all matters so triable be tried before a jury;

b.      That Defendants shall compensate Plaintiff for her compensatory damages of more than Twenty-Five Thousand Dollars ($25,000), in an amount to be determined at trial by the finder of fact;

c.      For punitive damages in an amount calculated to punish Defendants and deter similar future conduct;

d.      For liquidated damages pursuant to the Age Discrimination in Employment Act;

e.      For a judgment finding that Defendants' employment practices described herein are unlawful;

f.      Pre- and post-judgment interest as provided by law;

g.      The costs of this action;

h.      Plaintiff's attorneys' fees; and

i.      Such other and further relief as the Court may deem just and proper.

**ANSWER:   Defendants deny the allegations contained in Plaintiff's Prayer for Relief. Defendants further deny that Plaintiff is entitled to any relief sought therein or to any relief whatsoever.**

## AFFIRMATIVE AND OTHER DEFENSES

Subject to and without waiving any prior objection, answers or defenses, and without accepting the burden of proof on the matters, Defendants state the following affirmative and other defenses:

1.      Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

2.      Plaintiff's claim is barred by the doctrine of unclean hands.

3.      Any injuries or damages sustained by Plaintiff, all of which are denied, were caused by her own conduct and are barred in whole or in part against Defendants.

4.      Defendants acted at all times in good faith, with probable cause, and without malice or any ulterior purpose.

5.      Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

6.      At all times relevant to this suit, Defendants acted in good faith with regard to Plaintiff and had reasonable grounds for believing their actions were not in violation of any law.

7.      Some or all of Plaintiff's claims are barred by the doctrine of laches, estoppel, and/or waiver.

8.      Plaintiff's claims are barred to the extent that she failed to fulfill all statutory conditions precedent.

9.      Plaintiff's claims are frivolous, unreasonable and groundless, and accordingly, Defendants are entitled to an award of its attorneys' fees and costs associated with the defense of this action.

10.      Defendants have acted in good faith and have not acted willfully, deliberately, intentionally, outrageously or with extreme indifference to Plaintiff's rights and, thus, Plaintiff is not entitled to punitive damages on the law or the facts.

11.      To the extent Plaintiff has failed to mitigate her damages as required by law, Plaintiff is barred from recovery.

12.      To the extent that Plaintiff has failed to exercise reasonable diligence to mitigate any kind of alleged damages, the recovery of such damages is barred.

13.     Some or all of Plaintiff's claims are barred to the extent that Plaintiff requests relief exceeding that available under the law.

14.     Any actions that Defendants took with respect to Plaintiff were based on legitimate, non-discriminatory reasons.

15.     Plaintiff's claims are barred to the extent that Plaintiff fraudulently induced Defendants into believing that she would enter into a Separation Agreement with Defendants in exchange for the benefits bestowed upon her for agreeing to extend her employment with Defendants.

16.     Some or all of the mental or emotional damages alleged by Plaintiff may have preexisted either her employment or the claimed events upon which Plaintiff's claims are based, or are the result of other causes unrelated to Defendants.

17.     Plaintiff's claims are barred, in whole or in part, to the extent that they exceed the scope of, or are inconsistent with, any timely charge of discrimination.

18.     Certain alleged damages sought by Plaintiff may be barred in whole or in part by the doctrine of after-acquired evidence.

19.     Defendants are entitled to all offsets allowed by law against Plaintiff's alleged damages, if any.

20.     Defendants hereby reserve the right to seek leave to amend this Answer or add additional defenses.

This the 2nd day of July, 2024.

/s/ Benjamin P. Fryer
Benjamin P. Fryer, NC Bar No. 39254
bfryer@fordharrison.com
FORDHARRISON LLP
6000 Fairview Road, Suite 1415
Charlotte, NC 28210
Telephone: 980-282-1900
Facsimile: 980-282-1949

*Attorney for Defendants*